**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JENNIFER BEAUFORD, et al.,                                            PLAINTIFFS
individually and on behalf of
others similarly situated

v.                                              NO. 4:12CV00139 JLH

ACTIONLINK, LLC                                                       DEFENDANT

<u>**OPINION AND ORDER**</u>

This is a collective action for overtime wages due under the Fair Labor Standards Act,

29 U.S.C. § 201 *et seq*. Originally commenced by nine plaintiffs, after the case was certified as a

collective action, a total of sixty-seven employees or former employees of ActionLink, LLC, became

plaintiffs. After an extensive series of motions and briefs, the Court granted summary judgment in

favor of ActionLink against twenty-eight of the sixty-seven plaintiffs. ActionLink then made an offer

of judgment to the remaining thirty-nine plaintiffs in the total amount of $359,455.77. Those

plaintiffs now have filed a motion for attorneys' fees and costs. For reasons that will be explained,

the motion is granted in part and denied in part.

**I.**

ActionLink provides a variety of marketing functions for major home electronics and

appliance manufacturers. In 2010, ActionLink contracted with LG Electronics USA to provide full-

service marketing campaigns for LG products, known as the LG Slingshot Program. In February of

2011, as part of the LG Slingshot Program, ActionLink began employing brand advocates. The

plaintiffs in this action were current and former brand advocates. Brand advocates would visit retail

stores and educate the retail stores' staffs about LG products. Brand advocates did not, however,

sell LG products to retail stores or to consumers. Brand advocates earned up to $42,000 per year.

They did not receive incentive-based compensation.  They often worked more than forty hours per week but were not paid overtime compensation.

On March 2, 2012, nine current or former brand advocates commenced this action for themselves and others similarly situated seeking, among other things, compensation for the unpaid overtime and liquidated damages.

On October 16, 2012, the plaintiffs filed a motion to certify this action as a collective action pursuant to 29 U.S.C. § 216(b).  The Court granted that motion on November 9, 2012.  As noted, a total of sixty-seven current or former brand advocates, including the original nine plaintiffs, joined in this collective action.

The parties then filed cross-motions for summary judgment.  In an Opinion and Order entered on March 27, 2013, the Court granted summary judgment in favor of the plaintiffs on the applicability of the outside-sales exemption and the administrative exemption to the overtime requirements of the Fair Labor Standards Act, which were the only exemptions claimed by ActionLink.

On July 23, 2013, ActionLink filed a motion for summary judgment with respect to twenty-eight of the sixty-seven plaintiffs on the ground that those plaintiffs had entered into a settlement of their overtime claims, their claims were barred by the doctrine of res judicata, or both.  In an Opinion and Order entered on September 3, 2013, the Court granted that motion and dismissed the claims of twenty-eight of the plaintiffs.  The plaintiffs filed a motion for reconsideration as to twenty-five of those plaintiffs, which the Court denied.

Trial on the claims of the remaining thirty-nine plaintiffs was to begin during the week of September 30, 2013.  Two weeks before trial—on September 16, 2013—ActionLink served an offer of judgment on the remaining thirty-nine plaintiffs pursuant to Federal Rule of Civil Procedure 68.

The offer of judgment included "an award of reasonable attorneys' fees now accrued within the meaning of Federal Rule of Civil Procedure 68 to be determined by the Court on a properly supported motion." The offer specified a certain amount for each plaintiff, with the total for all thirty-nine plaintiffs amounting to $359,455.77. The offer was expressly conditioned upon each of the plaintiffs accepting the offer. On September 26, 2013, the thirty-nine remaining plaintiffs filed their acceptance of the offer of judgment and, on that same day, the Court entered judgment pursuant to the plaintiffs' acceptance of the offer of judgment.

The plaintiffs now seek an award of attorneys' fees in the total amount of $332,110.00[1] plus costs and expenses in the amount of $3,375.22.

## II.

### A.    Attorneys' Fees

The starting point for determining the amount of reasonable fees is the lodestar, which multiplies the number of hours reasonably expended by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983). In determining the lodestar, a court may consider such factors as

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

---

[1] The original motion sought fees in the amount of $332,147.50, but in their reply the plaintiffs reduced that amount to take into account one specific clerical entry.

*Id.* at 430 n.3, 103 S. Ct. at 1937 n.3.  When the party seeking an award of fees submits inadequate documentation of its hours and rates, "the district court may reduce the award accordingly."  *Id.* at 433, 103 S. Ct. at 1939.  "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission."  *Id.* at 434, 103 S. Ct. at 1939-40.  After determining the lodestar, other considerations, such as "the important factor of the 'results obtained,'" may lead a court to adjust the fee upward or downward.  *Id.* at 434, 103 S. Ct. at 1940.  No precise rule or formula exists for making these determinations.  *Id.* at 436, 103 S. Ct. at 1941.  "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Id.* at 437, 103 S. Ct. at 1941.

The plaintiffs have provided a table summarizing the hours and hourly rates for each person whose time they are seeking compensation.  That table is as follows:

|  | Hours | Rate | Total |
|---|---|---|---|
| John Holleman | 223.80 | $475 | $106,305.00 |
| Maryna Jackson | 202.20 | $375 | $75,825.00 |
| Tim Steadman | 47.90 | $325 | $15,567.50 |
| Paige Breech | 109.30 | $275 | $30,057.50 |
| Amber Schubert | 82.80 | $325 | $26,910.00 |
| Steve Rauls | 226.30 | $275 | $62,232.50 |
| Gaston Rauch | 39.70 | $125 | $4,962.50 |
| Jeanette Easter | 16.30 | $125 | $2,037.50 |
| Sharon Simnacher | 31.80 | $125 | $3,975.00 |
| Tina Sanders | 33.90 | $125 | $4,237.50 |
| Total | 1,014 |  | $332,110.00 |

The initial issue is whether the hourly rates are reasonable.  Earlier in 2013, Holleman & Associates, who represented the plaintiffs in this action, represented three plaintiffs in a Fair Labor Standards Act action that went to trial in this Court.  *Madden v. Lumber One Home Ctr., Inc.*, No. 4:10CV01162-JLH (E.D. Ark.).  Although the jury returned verdicts in favor of the defendant in that action, the Court entered judgment as a matter of law in favor of the plaintiffs.  The plaintiffs then sought an award of attorneys' fees.  In *Madden*, the plaintiffs sought an hourly rate of $275 for John Holleman, $225 per hour for Maryna Jackson, between $175 and $225 per hour for other associates, and between $75 and $100 per hour for paralegals.  Lumber One conceded the reasonableness of the hourly rates, and the Court accepted them as reasonable.  *Madden v. Lumber One Home Ctr., Inc.*, No. 4:10CV01162-JLH, slip op. at 8 (E.D. Ark. May 22, 2013) (Document #102).

Obviously, the hourly rates requested here are much higher than those requested and approved for work performed by the same lawyers during substantially the same period of time[2] and based upon the same statutory scheme.  The plaintiffs contend, nevertheless, that the substantially greater rates requested in this action are reasonable for three reasons.  First, the rates requested in *Madden*, according to the plaintiffs, were below market rate for general litigation in Arkansas.  Second, ActionLink was represented by national counsel, Littler Mendelson, so the plaintiffs argue that their lawyers should receive rates similar to those that ActionLink paid Littler Mendelson to defend the case.  Third, the plaintiffs contend that this case is considerably more complex than *Madden* and the relevant market for legal services is broader than Arkansas.

---

[2] In *Madden*, the fee petition was filed on March 15, 2013, and sought compensation for services provided between July 9, 2010, and February 20, 2013.  Here, the fee petition was filed on October 10, 2013, and sought compensation for services provided between February 6, 2012, and October 9, 2013.

"As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)). In some instances, "[a] national market or a market for a particular legal specialization may provide the appropriate market." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993) (quoting *Hendrickson v. Branstad*, 740 F. Supp. 636, 642 (N.D. Iowa 1990)); *see also Little Rock Sch. Dist. v. Arkansas*, 674 F.3d 990, 997 (8th Cir. 2012). "In a case where the plaintiff does not use local counsel, the court is not limited to the local hourly rate, if the plaintiff has shown that, in spite of his diligent, good faith efforts, he was unable to find local counsel able and willing to take the case." *Emery*, 272 F.3d at 1048. When the plaintiff employs out-of-state counsel, the court may still award a fee based on in-state rates if the plaintiff could have found qualified counsel inside the state. *Id*. Here, the plaintiffs could have and did in fact employ qualified counsel inside the state to represent them during this action. A number of lawyers and law firms in central Arkansas, including Holleman & Associates, regularly represent plaintiffs in FLSA cases. Thus, "it cannot be said that the claimed national rates were required to attract experienced [FLSA] counsel." *Little Rock Sch. Dist.*, 674 F.3d at 998.

Contrary to the plaintiffs' argument, this action was not considerably more complex than *Madden* insofar as the relevant legal issues were concerned. In *Madden*, as here, the plaintiffs filed a motion to certify the case as a collective action and a motion for partial summary judgment on the issue of the applicability of exemptions. In *Madden* those motions were denied and the action went to trial, whereas here the motions were granted and the case was resolved before trial. Partly because it was certified as a collective action, this action entailed much more time and labor than *Madden*, but

6

that complexity, if complexity is the right word, is considered in determination of the time and labor involved, rather than in the appropriate hourly rate. *See Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010) ("[T]he novelty and complexity of a case generally may not be used as a ground for an enhancement because these factors 'presumably [are] fully reflected in the number of billable hours recorded by counsel.'") (quoting *Blum v. Stenson*, 465 U.S. 886, 898, 104 S. Ct. 1541, 1549, 79 L. Ed. 2d 891 (1984))).

Finally, the Court does not accept the plaintiffs' argument that the hourly rates in *Madden* were below market even for general litigation in Arkansas. In a pair of consolidated cases similar to this case, the Court recently approved as reasonable a request for hourly rates of $275 for partners, $225 for associates, and $110 for legal assistants. *Hendricks v. Inergy, L.P.*, No. 4:12CV00069-JLH, slip op. at 4-5 (E.D. Ark. January 6, 2014) (Document #133). In light of this Court's determination in *Madden*, the recent findings in *Hendricks*, as well as the Court's knowledge of the market for attorneys in central Arkansas,[3] the Court finds that a reasonable hourly rate for the plaintiffs'

---

[3] "[D]istrict courts may rely on their own experience and knowledge of prevailing market rates." *Trickey v. Caman Indus. Techs. Corp.*, 705 F.3d 788, 807 (8th Cir. 2013). The Court takes note of the following awards of attorneys' fees in this district: *Fuller v. Fiber Glass Sys., LP*, 618 F.3d 858, 868 (8th Cir. 2010) (finding no abuse of discretion where trial court *sua sponte* reduced hourly rate from $250 to $225 in employment discrimination case); *Bennett v. Nucor Corp.*, No. 3:04CV00291, 2012 WL 3962459, at *4 (E.D. Ark. Sept. 10, 2012) (reducing rates from $525/hour and $625/hour to $375/hour and $350/hour for partners with 25-30 and more than 36 years' experience); *Jackson Bauxite Sch. Dist.*, No. 4:08CV03610 WRW, 2010 WL 3522391, at *1 (E.D. Ark. Sept. 2, 2010) (approving hourly rates in Title VII case of $150, $175, and $250); *Ware v. Little Rock Sch. Dist.*, No. 4:04CV01014 JMM, 2007 WL 2258691, at *4 (E.D. Ark. Aug. 3, 2007) (approving hourly rate in Title VII case of $185); Brief in Support of Plaintiff's Petition for Attorney's Fees and Plaintiff's Bill of Costs at Exh. A, *Brooks v. Little Rock Sch. Dist.*, No. 4:07CV00453 GTE (Document #38) (motion for attorney fees in employment case by attorneys of a leading Little Rock law firm, charging hourly rates of $350, $275, and $260, respectively, while paralegals charged $90).

attorneys in this case is $275 for Holleman, between $175 and $225 for his associates, and $100 for legal assistants.

The next issue requires the Court to determine the number of hours reasonably expended. As noted, plaintiffs seek compensation for 1,014 hours. ActionLink contends, for several reasons, that this is an excessive number of hours on which to base an award of attorneys' fees in this action. Two of those arguments have merit. First, ActionLink has identified entries totaling approximately sixty-eight hours for work done for plaintiffs who were among the twenty-eight against whom ActionLink prevailed on summary judgment or for persons who never became plaintiffs in this action. These persons were not prevailing parties, so no award for attorneys' fees may be entered for work done specifically for them. Second, the Court has identified approximately thirty-two hours that relate to time for secretarial services. "Secretaries' salaries come within a firm's overhead. Secretarial work on a case should not be billed to a client, nor to an opposing party in a fee-shifting case." *Gilster v. Primebank*, 884 F. Supp. 2d 811, 872 (N.D. Iowa 2012).

One of the contested issues relates to the fact that the plaintiffs seek compensation for services performed after the offer of judgment was extended. ActionLink objects, contending that the offer of judgment provided that attorneys' fees would be paid only for services performed up to the date the offer of judgment was extended.

"An offer of judgment is generally treated as an offer to make a contract." *Hennessy v. Daniels Law Office*, 270 F.3d 551, 553 (8th Cir. 2001). Here, the pertinent part of the offer of judgment provided for "an award of reasonable attorneys' fees now accrued within the meaning of Federal Rule of Civil Procedure 68 to be determined by the Court on a properly supported petition." ActionLink contends that this language unambiguously excludes compensation for attorneys' fees to

services rendered on or before the date that the offer of judgment was extended.  By contrast, the plaintiffs contend that the language is ambiguous and could be construed to include compensation for services rendered after the offer of judgment was extended.  The issue boils down to whether *now* in the sentence refers to the date that the offer was extended or the date that the offer was accepted and the contract formed.  At least two courts have held that an offer of judgment using the terms "reasonable attorneys' fees now accrued" includes compensation for services through the date that the offer is accepted, not simply through the date that the offer was made.  *Schommer v. Accelerated Receivable Solutions*, No. 8:11CV95, 2011 WL 3422775, at *2 (D. Neb. Aug. 4, 2011) (holding that an offer that limited fees to "reasonable attorneys' fees now accrued" included fees up through the date the offer was accepted); *Pearson v. Nat'l Credit Sys., Inc.*, No. CV10-526-PHX-MHM, 2010 WL 5146805, at *3 (D. Ariz. Dec. 13, 2010) (holding that an offer of judgment that included "reasonable attorney fees now accrued" limited fees to those accrued prior to the acceptance of the offer of judgment); *Aiello v. Wyndham Prof'ls, Inc.*, No. CV10-1005-PHX-MHM, 2010 WL 4942755, at *3 (D. Ariz. Nov. 24, 2010) (same).

ActionLink cites two cases from the Eastern District of Pennsylvania, but in both of those cases the terms of the offer of judgment were different from the terms here.  In both of those cases, the offer of judgment provided for attorneys' fees "accrued through the date of this offer of judgment."  *Brass v. NCO Fin. Sys., Inc.*, No. 11-CV-1611, 2011 WL 3862145, at *3 (E.D. Pa. July 22, 2011); *Williams v. NCO Fin. Sys., Inc.*, No. 10-5766, 2011 WL 1791099, at *3 (E.D. Pa. May 11, 2011).  A third case from the Eastern District of Pennsylvania, which ActionLink does not cite, also held that fees could not be recovered for services rendered after the date of the offer of judgment.  In that case, the offer of judgment provided:

The Judgment entered shall also include an amount for reasonable costs and attorneys' fees accrued through the date of this Offer of Judgment. Reasonable costs and attorneys' fees are to be agreed upon by the parties, or, if the parties are unable to agree, to be determined by the Court on application [sic] Plaintiff's counsel subject to the limitation that attorney's fees and costs are cut off as of the date of this Offer of Judgment.

*Alexander v. NCO Fin. Sys., Inc.*, No. 11-401, 2011 WL 2415156, at *1 (E.D. Pa. June 16, 2011).

Similarly, in a case in the District of Minnesota, the offer of judgment provided, "Plaintiff's reasonable

attorney fees and costs shall be limited to time and amounts expended on Plaintiff's claims in this

matter through the date of Plaintiff's counsel's receipt of service of this Offer." *Young v. Diversified*

*Consultants, Inc.*, 554 F. Supp. 2d 954, 957 (D. Minn. 2008).

In view of these authorities, the Court finds that ActionLink's offer of judgment was

ambiguous on the issue of whether plaintiffs would be entitled to compensation for services rendered

by their attorneys after the date of the offer of judgment. The phrase "now accrued" could be read

to refer to the date that the offer was extended or the date that the offer was accepted and the

contract formed. As noted, at least two courts have construed the phrase "now accrued" in this

context to mean that fees may be recovered for services rendered through the date that the offer of

judgment was accepted. Moreover, the cases upon which ActionLink relies show that if a defendant

wishes to draft an offer of judgment so as to limit fees recovered to those services rendered before

the date of the offer of judgment, it is easy to do so. The offer of judgment could have simply used

the phrase "through the date of the offer of judgment." That was the phrase used in *Williams* and

*Brass*. In *Alexander*, the offer of judgment used the phrase "now accrued" but added a sentence

specifying "that attorneys' fees and costs are cut off as of the date of this Offer of Judgment." *Id.*

Likewise, in *Young*, the offer expressly limited fees to time expended through the date that the offer of judgment was served.

"It is a long standing principle of contract law that, absent parol evidence as to the meaning of an ambiguous term, ambiguous terms in a contract are construed against the drafter of the contract." *Hennessy*, 270 F.3d at 553-54. "Since [ActionLink] drafted the offer, and the parties offered no extrinsic evidence with respect to the meaning of the offer, we construe the ambiguity in the contract against [ActionLink], and hold that [ActionLink] is liable for attorneys' fees" through the date that the offer of judgment was accepted and the contract formed. *Id.* at 554.

That the offer of judgment does not unambiguously exclude compensation for services rendered after the date that the offer was extended does not end the inquiry. The determination still must be made whether it was reasonable under the circumstances for plaintiffs' counsel to continue the work following the offer of judgment.

> In determining what fee is reasonable in the circumstance, the district court must take into consideration the amount of the Rule 68 offer, the stage of the litigation at which the offer was made, what services were rendered thereafter, and whether it was reasonable to continue litigating the case after the Rule 68 offer was made.

*Haworth v. State of Nev.*, 56 F.3d 1048, 1052-53 (9th Cir. 1995); *see also Dalal v. Alliant Techsystems, Inc.*, 182 F.3d 757, 761 (10th Cir. 1999). Here, ActionLink waited until two weeks before trial to make the offer of judgment, and it conditioned the offer of judgment on each and every one of the thirty-nine remaining plaintiffs accepting the offer. Thus, plaintiffs' lawyers were charged with communicating with thirty-nine clients within a period of less than two weeks in order to explain the settlement and ascertain whether each of the thirty-nine would agree to the settlement. Because the offer was extended so close to the trial date, and because the offer was contingent on each and

11

every one of the thirty-nine plaintiffs accepting the offer, plaintiffs' counsel had no alternative but to continue preparing for trial during those two weeks.  Thus, it was reasonable for them to continue both working on the proposed settlement and preparing for trial during the time between the date that the offer of judgment was extended and the date that the offer was accepted.  Accordingly, fees will be awarded for the period of time after the offer of judgment was extended but not after the offer was accepted.

ActionLink objects to the fee request on other grounds, as well.  ActionLink contends that many of the time entries are too vague and imprecise to form the basis for an award of attorneys' fees, that there are excessive and redundant time entries, and that the action did not justify the number of lawyers and paralegals who worked on it.  All of those arguments are overruled.  While some of the time entries could have been more precise, viewing the time entries as a whole, they are adequate to permit the Court to determine the amount of time and labor reasonably expended in this action.  Nor does the Court agree with ActionLink that a great deal of the time recorded by the various professionals is redundant.

After reducing the hourly rates proposed to the rates awarded in the *Madden* case, and after eliminating time entries attributed to work for persons who were not prevailing parties, as well as eliminating secretarial time entries that relate to secretarial work and time entries for work performed after the offer of judgment was accepted, the Court concludes that time and labor reasonably expended in this matter was 866.2 hours, resulting in a lodestar of $175,885.00 as shown on the following table:

| BILLER | HOURS | RATE | TOTAL FEES |
|--------|-------|------|------------|
| John Holleman | 183.5 | $275 | $50,462.50 |

| | | | |
|---|---|---|---|
| Amber Schubert | 77.3 | $175 | $13,527.50 |
| Maryna Jackson | 197.9 | $225 | $44,527.50 |
| Steve Rauls | 216.5 | $175 | $37,887.50 |
| Paige Breech | 98.4 | $175 | $17,220.00 |
| Tim Steadman | 24.0 | $225 | $5,400.00 |
| Gaston Rauch | 28.2 | $100 | $2,820.00 |
| Jeanette Easter | 12.5 | $100 | $1,250.00 |
| Sharon Simnacher | 27.9 | $100 | $2,790.00 |
| | 866.2 | | **$175,885.00** |

This determination of the lodestar figure "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553, 130 S. Ct. 1662, 1673, 176 L. Ed. 2d 494 (2010) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566, 106 S. Ct. 3088, 3098, 92 L. Ed. 2d 439 (1986)).  Consequently, "there is a 'strong presumption' that the lodestar figure is reasonable, but that presumption may be overcome in those rare circumstances in which the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue*, 552 U.S. at 554, 130 S. Ct. at 1673.

Here, the lodestar figure takes into account the time and labor required, the novelty and difficulty of the questions, the skill needed to perform the legal service properly, the extent to which the employment in this case precluded acceptance of other cases, the customary fee, the fact that the fee is contingent, any time limitations imposed by the client or the circumstances, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, the nature and length of the professional relationship with the clients, and awards in similar cases.

13

Here, in addition to the risk associated with the possibility that the plaintiffs might not have prevailed, there is the additional risk that ActionLink may be unable to satisfy the judgment and unable to pay the attorneys' fees awarded to plaintiffs' counsel.  *See* Document #129-4 at 6 ¶ 11. Based on the prospect that ActionLink may be unable to satisfy the judgment, the plaintiffs moved for leave to register the judgment in other districts or in the alternative to require ActionLink to post a bond.  Document #143.  ActionLink made no response to that motion, so the Court has accepted as true the representation that ActionLink may be unable to satisfy the judgment.  Document #148. Thus, the Court is presented with the rare circumstance in which a defendant has made an offer of judgment pursuant to Rule 68, the plaintiffs have accepted that offer, but the defendant may be unable to satisfy the judgment.  Because of this rare circumstance, the Court believes that it is appropriate to enhance the fee award to plaintiffs' counsel based on the risk that ActionLink may be unable to pay the award and the additional time and labor that may be involved in collecting the judgment and in collecting the award of attorneys' fees.  Therefore, the lodestar figure will be enhanced by ten percent, or $17,588.50, resulting in a total award of attorneys' fees of $193,473.50.

**B.**     **Costs and Expenses**

In addition to the request for attorneys' fees, the plaintiffs seek costs and expenses in the amount of $3,375.22.  ActionLink has not objected to this request.  Therefore, in addition to the award of attorneys' fees, the plaintiffs will be awarded costs and expenses in the amount of $3,375.22.

## CONCLUSION

For the reasons stated, the plaintiffs' motion for attorneys' fees and costs is granted in part and denied in part.  Document #128.  Attorneys' fees are awarded in the amount of $193,473.50.

Costs and expenses are awarded in the amount of $3,375.22.  Judgment will be entered in favor of the plaintiffs against ActionLink in the amount of $196,848.72.

IT IS SO ORDERED this 15th day of January, 2014.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE