IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JENNIFER BEAUFORD et al.,
Individually and on behalf of others
Similarly Situated                                                                    PLAINTIFFS

v.                                      Case No. 4:12-cv-139-JLH

ACTION LINK, LLC                                                                       DEFENDANT

## ACTIONLINK, LLC'S POST-TRIAL BRIEF

On June 1, 2016, the parties appeared before this Court for a bench trial. The sole issue is plaintiffs' request for liquidated damages and the dispositive issue is whether ActionLink, LLC acted in good faith when classifying the Brand Advocates as exempt from overtime under the Fair Labor Standards Act (the "FLSA"). At the conclusion of the bench trial, the Court requested briefing and stated that ActionLink's post-trial brief would serve to preserve any argument that would be made at the close of the evidence. This Court should find in ActionLink's favor and deny Plaintiffs' request for liquidated damages.

### I.    FACTS

ActionLink works with consumer-electronics companies to drive sales of electronics in retail stores. **Trial Tr. at 12:3-5.** The company is based in Akron, Ohio. **Trial Tr. at 41:4-5.** In 2010, ActionLink won a contract with LG Electronics to start the LG Slingshot program. **Trial Tr. at 41:14-42:10.** The purpose of that program was to increase the sales of LG electronics over competitors like Samsung. **Trial Tr. at 42:11-15.** The LG Slingshot program required people working under the title of Brand Advocates to go to retail stores and use their judgment about how to increase sales at that location. *See* **Trial Tr. at 55:19-21.** The Brand Advocates often interacted with customers. **Trial Tr. at 48:16-49:5.** When interacting with

customers, the Brand Advocates did not actually ring up the purchase, but would handle all other parts of the sale.  **Trial Tr. at 81:1-5.**  The Brand Advocates had a discretionary budget of $275 per month to help build relationships with the retail sales associates.  *Beauford v. ActionLink, LLC*, 781 F.3d 396, 404 (8th Cir. 2015).  ActionLink measured the performance of the Brand Advocates by determining whether the "sell-through" at a particular retail store increased.  **Trial Tr. at 44:7-45:6.**  Sell-through measures how many units are sold to consumers at each store. **Trial Tr. at 45:1-4.**   ActionLink does not consider Brand Advocates to be promotional employees.  **Trial Tr. at 46:7-9.**  This is because promotional employees are not geared to selling or driving sales.  **Trial Tr. at 45:17-46:6.**  Instead, promotional employees educate the public. **Trial Tr. at 68:16-21.**

Brand Advocates are ActionLink employees.  *Beauford*, 781 F.3d at 399.  During the planning stages for the LG Slingshot program, ActionLink had to determine whether Brand Advocates should be classified as exempt from overtime under the FLSA.  A team was assembled that included high-level employees, members of ActionLink's human resources department, members from the executive team, and David Gries.  **Trial Tr. at 81:17-22.**  The team included people with "years of experience in labor investigation positions" and a law-school graduate who investigated employment claims.  **Trial Tr. 57:8-13.**  Mr. Gries was ActionLink's payroll manager in 2010 and 2011, and he is now the Accounts and Analytics Manager for the company.  **Trial Tr. at 12:22-23; 11:17-18.**  Mr. Gries downloaded the relevant information he could find on the Department of Labor's website and distributed it to the team. **Trial Tr. at 24:21-25:2; 13:16-19.**  ActionLink also contacted Oasis Outsourcing, ActionLink's human resources management company and requested information ActionLink could use to make the decision.  **Trial Tr. at 56:22-24.** The memorandum the company received detailed a

number of exemptions, and listed pharmaceutical representatives as being exempt under the outside-sales exemption.  **Trial Tr. at 58:19-16; Plaintiffs' Trial Exhibit 6.**

After all of the information the team collected was distributed, the team had a meeting with the chief operating officer, Del Tanner.  **Trial Tr. 12:24-13:6.**  Mr. Tanner ultimately made the decision to classify the Brand Advocates as exempt.  **Trial Tr. at 61:18-19.**  Some of the team members, including Mr. Gries, were "on the fence" about how to classify Brand Advocates at the beginning of the meeting.  **Trial Tr. at 13:23-14:3.**  After extensive discussion, the large majority of the participants believed that the Brand Advocates should be classified as exempt.  **Trial Tr. at 61:9-15.**  Mr. Tanner considered all of the information from the Department of Labor, the Oasis memorandum, and industry practice.  **65:24-66:21.**  Mr. Tanner took the process seriously.  **Trial Tr. at 58:2-5.**

Mr. Tanner and others at the meeting believed that Brand Advocates were very similar to pharmaceutical representatives.  **Trial Tr. at 14:15-22; 58:25-59:16.**  To confirm that belief, Mr. Tanner contacted pharmaceutical representatives he knew and asked very detailed questions about their job duties, how they do their jobs, how their performance is measured, and how they are paid.  **Trial Tr. at 59:16-60:22.**  Mr. Tanner came away from those conversations with the belief that pharmaceutical representatives and Brand Advocates were almost identical in their general job duties and descriptions.  **Trial Tr. at 60:10-13.**  The information the team found provided that pharmaceutical representatives were exempt, and that influenced Mr. Tanner and the large majority of the team to agree that the Brand Advocates are properly classified as exempt.  **Trial Tr. at 58:21-59:4.**  Mr. Gries also came away from the meeting thinking that the Brand Advocates were classified correctly and that ActionLink was diligent in its investigation.

**Trial Tr. at 15:18-24.**  ActionLink treated its employees fairly.  **Trial Tr. at 23:15-17; 66:25-67:1.**

In fall of 2011, the Department of Labor (the "DOL") began investigating whether Merchandising Representatives—another type of employee in the LG Slingshot Program—were properly classified.  **Trial Tr. at 15:4-11.**  In the beginning of that investigation, the DOL told ActionLink that the Brand Advocates were properly classified.  **Trial Tr. at 63:22-24.** However, when the investigation regarding the merchandising representatives was almost complete, the DOL decided to look again at the Brand Advocates to determine whether they were properly classified.  **Trial Tr. at 15:12-17.**  Mr. Gries was surprised that there was a question about the Brand Advocates' classification because he thought the company had been diligent in their efforts to investigate and classify properly those employees.  **Trial Tr. at 15:18-24.**  Mr. Gries provided approximately 120 pages of spreadsheets to the DOL, as well as all documents and other information the DOL requested.  **Trial Tr. at 16:25-17:2; Def. Tr. Ex. 1.** ActionLink provided everything the DOL asked for and cooperated fully with the investigation. **Trial Tr. at 17:3-5; 16:5-7.**  By December 23, 2011, it was clear the Department of Labor was going to find that the Brand Advocates were misclassified.  **Trial Tr. at 34:22-25.**  As the DOL and the Eighth Circuit stated, the Brand Advocates were unintentionally misclassified. *Beauford*, 781 F.3d at 400.  ActionLink quickly reclassified the Brand Advocates and instituted new time-keeping procedures.  **Trial Tr. at 22:7-12.**  Furthermore, ActionLink paid the Brand Advocates quickly—on December 30, 2011.  **Trial Tr. at 21:22-25.**  The DOL approved the payments.  **Trial Tr. at 21:10-21.**  Many of the payments were greater than the DOL required. **Trial Tr. at 23:3-6.**  ActionLink treated its employees fairly during this process as well, acting quickly to remedy its unintentional mistake and ensure compliance with the law.  **Trial Tr. at**

4

**23:7-14.** Once the Brand Advocates were reclassified, they worked only "considerably minimal" overtime. **Trial Tr. at 22:16-19.**

## II.    ARGUMENT

The Eighth Circuit holds that the district court has the sound discretion to decline to award liquidated damages. *Chao v. Barbecue Ventures, LLC*, 547 F.3d 38, 941 (8th Cir. 2008). The Court can award no liquidated damages "if the employer shows that its actions were taken 'in good faith' and with 'reasonable grounds for believing' that they complied with the FLSA[.]" *Id.* (quoting 29 U.S.C. § 260). The good-faith standard has both subjective and objective components. The classification must have been "objectively reasonable." *Id.* at 942. Additionally, the employer must establish that it had "an honest intention to ascertain and follow the dictates of the FLSA . . . . [A] defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.*

Here, ActionLink has proven its good-faith defense. It took affirmative steps with "an honest intention to ascertain and follow the dictates of the FLSA." *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990). Additionally, the highest level executive in charge of employment decisions had a subjective belief the Brand Advocates were classified properly. The classification was also objectively reasonable. This Court should deny Plaintiffs' request for liquidated damages.

### A.    ActionLink Proved It Had Subjective And Objective Good Faith.

One instructive case is *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498, 509 (8th Cir. 1990). In that case, the Eighth Circuit held that an employer acted in good faith when it proved "an honest intention to ascertain and follow the dictates of the FLSA." *Hultgren*, 913 F.2d at 509. The employer in did not have to pay liquidated damages because its high-level

5

employees "testified they obtained relevant Wage and Hour regulations and opinion letters and consulted with counsel numerous times in attempting to comply with FLSA requirements." *Id.* An official for the employer also testified that he believed the employer was in compliance with the FLSA. *Id.* The court also held the classification was objectively reasonable because there was uncertainty in the Wage and Hour division about how the FLSA was being applied to employees in group homes. *Id.*

Like the employer in *Hultgren*, ActionLink did extensive research and took the research seriously. Trial Tr. at 24:21-25:2; 13:16-19; 56:22-24; 58:2-5. High-level employees at ActionLink obtained information from the Department of Labor's website and consulted with their human resources management company "in attempting to comply with FLSA requirements." Trial Tr. at 56:22-24. It is reasonable for an employer to rely on information from personnel experts when making classification decisions. *See Cross v. Arkansas Forestry Com'n*, 938 F.2d 912, 917-18 (8th Cir. 1991). This is true when the position in questions shares characteristics with a position that is known to be exempt. *Id.* at 918. And, the chief operating officer at ActionLink investigated pharmaceutical representatives as a similar occupation that was exempt to determine whether Brand Advocates were truly comparable. Trial Tr. at 59:16-60:22. Further, high-level employees at ActionLink believed they were in compliance with the FLSA based in their investigations. Trial Tr. at 58:21-59:4. ActionLink's compliance with the Department of Labor's investigation and its willingness to quickly remedy the mistake is also evidence of its subjective good faith because it shows that ActionLink wanted to be in compliance and wanted to treat its employees fairly.

The decision was objectively reasonable because, before ActionLink classified the Brand Advocates, numerous courts had held that the similar job of pharmaceutical representatives was

exempt.  *See Christopher v. SmithKline Beecham Corp.*, 2009 WL 4051075, No. CV-08-1495
(D. Ariz. Nov. 20, 2009); *In re Novartis Wage & Hour Litigation*, 593 F.Supp.2d 637, 648
(S.D.N.Y. 2009); *Schaefer-LaRose v. Eli Lilly & Co.*, 663 F.Supp.2d 674 (S.D. Ind. 2009);
*Harris v. Auxilium Pharm., Inc.*, 644 F.Supp.2d 711 (S.D. Tex. 2009).   Indeed, ActionLink
received information from its professional human resources company that used pharmaceutical
representatives as an example of those types of jobs properly classified as exempt under the
outside sales exemption.  *See* Plt. Trial Ex. 6.   And, of course, the United States Supreme Court
ultimately held that pharmaceutical representatives are properly classified as exempt.
*Christopher v. SmithKline Beecham Corp.*, 132 S.Ct. 2156 (2012).   And, objectively, there are
number of similarities between pharmaceutical representatives and brand advocates, for
example:

- Both work to drive sales made by a third party;
- Both operate within specified territories and are assigned responsibility for specific locations;
- Success is measured by the incremental sales in their relative territory.

Indeed, Mr. Tanner testified that he used pharmaceutical representatives as the example of how
Brand Advocates operated in the retail world.  Trial Tr. at 59:4-8.  Because ActionLink believed
there are extensive similarities between Brand Advocates and pharmaceutical representatives, it
was objectively reasonable for the company to classify the Brand Advocates as exempt.

###### B.      Good Faith Does Not Require A Professional Opinion.

The fact that ActionLink did not get an opinion from an attorney or an official written
opinion from Oasis is not dispositive.  The Eleventh Circuit has explained that advice of an
expert "would have weighed in [the employer's] favor" but that it was not a dispositive fact.

*Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1273 (11th Cir. 2008).  Other courts have found good faith, even when the employer did not seek the opinion of a lawyer or other professional service provider.  The district court in *Fast v. Applebee's International, Inc.*, 2009 WL 2424095, No. 06-4146-CV (W.D. Mo. Aug. 4, 2009) denied the plaintiffs' motion for summary judgment on the good-faith defense.  In that case, the employer cited 1980 and 1985 DOL opinion letters to justify its decision to treat certain employees as tipped workers.  *Id.* at *4. The district court held that this was enough to make the employer's good faith an issue of fact. *Id.* at *5.  Similarly, another district court in this circuit has found that there was enough evidence of an employer's good faith to proceed to trial, even though the employer did not seek the advice of counsel when classifying the plaintiffs.  *Grage v. Northern States Power Co. Minnesota*, 47 F. Supp. 3d 844 (D. Minn. 2014) (reversed on other grounds by *Grage v. Northern States Power Co. Minnesota*, 813 F.3d 1051 (8th Cir. 2015)).  In that case, the employer created the position of Supervisor I by adding duties to the position of Coordinator. The employer classified Supervisor Is as exempt, and did not conduct a review of the position because the Coordinator position had been an exempt position.  *Id.* at 849.  This was done "through a thorough collaborative effort of over a dozen people."  *Id.* at 862.

ActionLink did more than either of the employers in *Fast* or *Grage*.  ActionLink took the affirmative steps of researching the DOL guidance, reaching out to its human resources management company, discussing the issue thoroughly through a series of meetings, and conducting further research about a similar position that was exempt.

A district court in California held that an employer met its burden of proving good faith and did not award liquidated damages to coroners who proved an FLSA violation. *Berry v. Sonoma County*, 791 F. Supp. 1395 (N.D. Ca. 1992) (reversed on other grounds by *Berry v.*

*Sonoma County*, 30 F.3d 1174 (9th Cir. 1994). In that case, the plaintiffs argued that the employer could not prove good faith in part because it did not seek an opinion from the DOL. *Id.* at 1418. The court rejected that argument and said that the employer had proven good faith when it made an effort to learn about the FLSA, read the statute, read DOL guidance about the statute, and read and attempted to interpret a Supreme Court case about on-call employees. *Id.* Similarly, ActionLink researched the outside-sales exemption on the DOL website, it obtained information from a professional human resource company, and the high-level ActionLink employees had several discussions attempting to interpret and apply the rules to Brand Advocates.

Another example is *Nelson v. Alabama Institute for Deaf and Blind*, 896 F. Supp. 1108 (N.D. Ala. 1995), where the district court held that the employer acted in good faith when its director of personnel "attended seminars on the FLSA and studied statutes, regulations, and agency opinions." At 1115. The director of personnel spoke to an investigator at the Department of Labor without receiving an official opinion from the agency. *Id.* Likewise, in this case, ActionLink received guidance from a professional human resources company, even though it was informal and did not result in an option about the Brand Advocate position.

Here, although no professional opinion was requested, ActionLink engaged the services of professionals to gather information necessary to make an informed decision about classifying Brand Advocates. ActionLink took several affirmative steps, and the lack of a professional opinion does not prevent a fining of good faith.

### III.   CONCLUSION

ActionLink took many affirmative steps to determine whether Brand Advocates should be exempt. A team of employees researched the outside-sales exemption and distributed that

material to high-level employees.  ActionLink considered information from the Department of Labor, its professional human resources company, as well as industry practice.  ActionLink also did further research to ensure it could properly analogize Brand Advocates to pharmaceutical representatives, which were known to be properly classified as exempt.  The decision makers at ActionLink took the issue seriously and felt they had made the right decision.  ActionLink's steps were objectively reasonable, given that courts across the country had held that the similar position of pharmaceutical representatives were subject to the outside-sales exemption. ActionLink also showed good faith in its cooperation with the Department of Labor in an effort to get the classification right.  Although the Department of Labor was on the fence about whether Brand Advocates were properly classified as exempt, when the Department of Labor found that ActionLink had unintentionally misclassified the Brand Advocates, ActionLink worked quickly to rectify the mistake.  ActionLink has worked hard and in good faith throughout its relationship with Plaintiffs.  This Court should hold that ActionLink acted in good faith and deny Plaintiffs' request for liquidated damages.

<div style="margin-left:40%;">

QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas  72201
Telephone: (501) 379-1700
Facsimile: (501) 379-1701
jfalasco@qgtlaw.com

By: /s/ Joseph R. Falasco
    Joseph R. Falasco (2002163)
    Amber Davis-Tanner (2011141)

*Attorneys for ActionLink, LLC*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which shall send notification of such filing to the following:

- **John Holleman**
  jholleman@johnholleman.net

- **Timothy A. Steadman**
  tim@johnholleman.net

<div align="right">
/s/ Joseph R. Falasco
Joseph R. Falasco
</div>