IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JENNIFER BEAUFORD, et al.,
INDIVIDUALLY & ON BEHALF OF OTHERS
SIMILARLY SITUATED                                                      PLAINTIFFS

v.                    Case No. 4:12-cv-139-JLH

ACTION LINK, LLC                                                        DEFENDANTS

---

**PLAINTIFFS' POST HEARING BRIEF AND
INCORPORATED MOTION FOR JUDGEMENT AS A
MATTER OF LAW ON LIQUIDATED DAMAGES**

---

### I. INTRODUCTION & PROCEDURAL BACKGROUND

This is a collective action under the Fair Labor Standards Act for wages owed. The remaining Plaintiffs ("Adams Plaintiffs") are part of a group of brand advocates who worked for Actionlink, LLC. The Court granted summary judgment that brand advocates were misclassified as exempt. (Doc. 85). The Court also granted Actionlink's motion for summary judgment that the Adams Plaintiffs had waived their claims by accepting back-pay checks that Actionlink issued following a limited Department of Labor investigation. (Doc. 103). Before the case could be tried, Actionlink offered judgment to the brand advocates who were not paid from the limited DOL investigation. (Doc. 124). The Adams Plaintiffs and Actionlink cross appealed, and the Eighth Circuit affirmed this Court's order on the classification issue and reversed and remanded on the waiver issue. (Doc. 154). On remand, the Court held a bench trial on Actionlink's defense to liquidated damages.

Actionlink did not prove it acted in both good faith belief and with reasonable grounds to believe that its decision to classify brand advocates as exempt employees complied with the Fair Labor Standards Act. Actionlink's story about how it analyzed the exempt status of brand advocates smacks of something dreamed up as an afterthought. Regardless, taken at face value Actionlink established that it learned that brand advocates might not qualify for the outside sales exemption, and, in response, it did not seek any professional advice to determine whether the exemption actually would apply. Actionlink merely decided that brand advocates could be exempt because a 2004 handout identified pharmaceutical sales representatives as an example of exempt outside sales employees. Actionlink did not even investigate why pharmaceutical sales representatives – a job it thought was identical to the brand advocate position – would qualify for the outside sales exemption. Actionlink did not met its heavy burden of establishing its good-faith defense to liquidated damages. This Court should award the Adams Plaintiffs liquidated damages in an equal amount to the checks Actionlink tendered as unpaid overtime.

## II. FACTUAL BACKGROUND

In early 2011, Actionlink launched the "LG Slingshot" program to provide marketing services to its customer LG Electronics. (*Tanner Test.* [Ex. A] at 41:14–42:15). The purpose of the program was to drive sales and increase LG's market share compared to Samsung, LG's competitor. (*Tanner Test.* [Ex. A] at 42:11–42:15). To perform these services, Actionlink hired brand advocates, including Plaintiffs. (*Tanner Test.* [Ex. A] at 42:16–42:25).

According to Actionlink's Chief Operations Officer, Del Tanner, full-time brand advocates are typically classified as an exempt position in the industry. (*Tanner Test.* [Ex. A] at 43:6–43:17). Part of a brand advocate's job is to work in retail stores that sell LG products and encourage the retailer's sales associates to recommend LG products to customers that enter the store. (*Tanner Test.* [Ex. A] at 44:7–45:6).[1] Brand advocates also maintain LG product displays in the retail stores, including moving the displays to central areas of focus and ensuring the displays enticingly display the LG product. (*Tanner Test.* [Ex. A] at 46:10–47:17). Actionlink monitors brand advocates' job performance based on sales metrics and other similar targets. (*Tanner Test.* [Ex. A] at 49:6–50:14). Brand advocates bring food and coffee to build relationships with sales associates to encourage the retailer's employees to recommend LG products to customers. (*Tanner Test.* [Ex. A] at 50:16–51:22). Brand advocates do not have register access at the retail stores to make sales. (*Tanner Test.* [Ex. A] at 80:24–81:5). Brand advocates do not take money from the retail store's customers. (*Tanner Test.* [Ex. A] at 72:20–21). Brand advocates do not have title to the LG electronics they promote, and they cannot transfer title of those products to the retail store's customers. (*Tanner Test.* [Ex. A] at 72:22–25).

---

[1] Some of Tanner's testimony about the duties and role of brand advocate position seems to conflict with the undisputed facts that formed the basis of this Court's summary judgment order, which the Eighth Circuit affirmed. Actionlink had the opportunity to present this evidence before the Court ruled on Plaintiffs' motion for summary judgment, and the Court should not accept new facts presented after judgment. *See, e.g., Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 413–14 (8th Cir. 1988); *Whitlock v. Midwest Acceptance Corp.*, 575 F.2d 652, 653 n.1 (8th Cir. 1978) (noting that movant has a duty to show that new argument or facts brought forward after judgment could not have been made prior to judgment). The Court should also take this late, conflicting testimony into consideration when it considers the veracity of Tanner's testimony.

Around September 2011, the United States Department of Labor began an investigation into Actionlink's classification of brand advocates. (*Gries Test.* [Ex. A] at 15:1–6). Actionlink's Payroll Manager, David Gries, was involved in the investigation and provided the DOL with the brand advocate job description and information on the brand advocate's hours worked and pay information. (*Gries Test.* [Ex. A] at 16:14–18). When calculating brand advocate's hours worked, Gries did not include the time those employees spent working before their first store visit or after their last store visit, including entering call reports, taking calls, answering emails, attending trainings, and completing other tasks. (*Gries Test.* [Ex. A] at 19:4–11). After the investigation, the DOL determined that Actionlink misclassified brand advocates as employees exempt from the DOL's overtime requirement. (*Gries Test.* [Ex. A] at 17:6–8).

Prior to the start of the LG Slingshot program, Actionlink contends that it investigated whether brand advocates would qualify for the outside sales exemption.[2] Despite the alleged industry custom and its past practice of treating similar full-time employees as exempt, Actionlink claims that it held a roundtable meeting to discuss whether it could classify brand advocates as exempt. (*Gries Test.* [Ex. A] at 26:22–27:8). Gries testified that he collected unidentified information from the DOL website, as well as an FLSA update handout from Actionlink's human resources management company,

---

[2] During the litigation, Actionlink also asserted that brand advocates might meet the requirements of the administrative exemption. *See, e.g.* Doc. 53. The only exemption that Actionlink claims to have researched or relied upon when classifying brand advocates as exempt employees was the outside sales exemption. *See e.g., Gries Test.* [Ex. A] 24:21-25:2 ("I was looking for information on the outside sales exemption . . . .").

Oasis. (*Gries Test.* [Ex. A] at 12:13–18). Using that information, Gries and Tanner testified they, along with human resources employees, "people from the executive team," and "people from the LG field team" had a meeting where they discussed the classification decision, and Tanner made the ultimate decision to classify brand advocates as exempt. (*Gries Test.* [Ex. A] at 12:13–13:12; *Tanner Test.* [Ex. A] at 56:16–60:22). After the meeting, not everyone included in the discussion agreed with the classification decision. (*Tanner Test.* [Ex. A] at 61:9–15).

Actionlink based its decision to classify brand advocates as exempt based on a 2004 handout using pharmaceutical sales representatives as an example of outside sales employees. Gries testified that "when the 'pharmaceutical rep' came up, that was kind of our deciding factor" in classifying brand advocates as exempt. (*Gries Test.* [Ex. A] at 13:23–14:6). Likewise, Tanner characterized the pharmaceutical sales representative example as "the end-all, be all" to the classification decision. (*Tanner Test.* [Ex. A] at 58:6–60:22). Tanner allegedly contacted pharmaceutical sales representatives to discuss their business and confirmed his opinion that these employees were virtually identical to brand advocates. (*Tanner Test.* [Ex. A] at 58:6–60:22). Tanner even opined that "while [he] expected to find some nuanced differences" between the pharmaceutical sales role and the brand advocate position that would cause him to take a closer look at the issue, his conversations revealed to him that there were no nuanced differences and the two positions "actually more closely resembled [Actionlink's] brand advocate model than he even originally thought." (*Tanner Test.* [Ex. A] at 58:6–60:22).

Gries and Tanner both testified that they read the FLSA's regulations explaining that promotional work was not exempt. Gries testified they "were unclear on" the part of the regulation relating to promotional work. (*Gries Test.* [Ex. A] at 26:8–21). Tanner admitted that there was a "conflict in [his] mind" about whether brand advocates could be classified as exempt, and that there "seems to be a conflict in the advice there." (*Tanner Test.* [Ex. A] at 73:8–20). Although Gries and Tanner were aware that brand advocates performed work that the regulations seemed to make nonexempt, Actionlink did not solicit any professional advice about the issue. (*Gries Test.* [Ex. A] at 25:8–20; *Tanner Test* [Ex. A] at 81:23–82:23).

### III. LEGAL STANDARD

Under the Fair Labor Standards Act, any time an employer violates the Act the employer "shall" be liable for the unpaid minimum wages and their unpaid overtime compensation and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). The relevant portion of the statute states:

> Any employer who violates the provisions of section 206 or section 207 of this title ***shall*** be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, ***and in an additional equal amount as liquidated damages***.

29 U.S.C. § 216(b) (emphasis added).

When the Act was originally passed, liquidated damages were automatic. In 1947, however, Congress passed the Portal-to-Portal Act and provided employers with a limited affirmative defense to liquidated damages. *See Barcellona v. Tiffany English Pub*, 597 F.2d 464, 468 (5th Cir. 1979) (discussing history of 29 U.S.C. § 260). Under the Portal-

to-Portal Act, an employer can avoid liquidated damages by proving it acted in good faith and had reasonable grounds to believe its actions did not violate the FLSA. 29 U.S.C. § 260. Unless the employer meets its burden of showing good faith and reasonable belief, a full award of liquidated damages is mandatory. *Braswell v. City of El Dorado*, 187 F.3d 954, 957 (8th Cir. 1999) (reversing trial court order that did not award an equal amount of liquidated damages). "[T]he burden is a difficult one, with double damages being the norm and single damages the exception." *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941-42 (8th Cir. 2008) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)).

The "good faith" requirement is a subjective standard where the employer must establish "an honest intention to ascertain and follow the dictates of the FLSA." *Chao*, 547 F.3d at 942. "To carry his burden, a defendant employer must show that he took affirmative steps to ascertain the Act's requirements, but nonetheless, violated its provisions." *Id.* The employer must also prove its position was objectively reasonable. *Id.* "[E]ven if the required showing is made, remission of damages remains within the sound discretion of the district court." *Brown v. L & P Indus.*, No. 5:04CV0379 JLH, 2005 U.S. Dist. LEXIS 39920, at *34 (E.D. Ark. Dec. 21, 2005).

IV. ARGUMENT

A. Actionlink's "Roundtable" is Not Believable.

Actionlink claims that before it classified brand advocates as exempt, it researched and held a roundtable meeting to discuss the exemption status. The evidence presented on this "roundtable" is not believable. Actionlink did not present any documentary

evidence that this roundtable actually took place, and could not identify what documents from the DOL it reviewed in reaching its decision. (*Gries Test.* [Ex. A] at 24:21–25:2). Instead, Actionlink presented the testimony of Gries (who was involved in the subsequent DOL investigation) and Tanner (who made the classification decision). Although Tanner testified that Keith Allen, the vice president of operations, and Shirley Berry, the director of human resources, were also present, Actionlink did not provide any testimony from those employees. (*Tanner Test.* [Ex. A] at 81:1–22). Moreover, Actionlink could not explain why it held the roundtable meeting in the first place given that it asserted there was a widespread industry practice to classify all full-time employees similar to brand advocates as exempt and that it had treated other full-time employees who performed similar work as exempt. (*Tanner Test.* [Ex. A] at 78:19–22). It seems unlikely that Actionlink would go through this process if both the industry and Company had a uniform practice of classifying brand advocates as exempt. The roundtable discussion, rather, smacks of afterthought as an attempt to avoid the FLSA's mandatory liquidated damages.

The plethora of FLSA litigation taking place at the time of the classification decision also calls into question the veracity of Actionlink's roundtable meetings. Both Tanner and Gries testified that once they saw the pharmaceutical sales representative listed as an exempt employee, they were assured that brand advocates were also exempt. (*Gries Test.* [Ex. A] at 13:23–14:6; *Tanner Test.* [Ex. A] at 58:6–60:22). Setting aside for a moment the obvious fundamental differences between the two positions, a simple online search at the time of the roundtable would have revealed that the classification of

pharmaceutical sales representatives as exempt employees was not settled. *See, e.g., In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2d Cir. 2010) (pharmaceutical sales representatives not exempt outside salesmen); *Jirak v. Abbott Labs., Inc.*, 716 F. Supp. 2d 740 (N.D. Ill. 2010) (pharmaceutical sales representatives not exempt outside salesmen); *Kuzinski v. Schering Corp.*, 604 F. Supp. 2d 385 (D. Conn. 2009) *aff'd* 384 Fed. Appx. 17 (2d Cir. 2010) (pharmaceutical sales representatives not exempt outside salesmen); *Schaefer-Larose v. Eli Lilly & Co.*, 663 F. Supp. 2d 674 (S.D. Ind. 2009) (pharmaceutical sales representatives exempt outside salesmen); *Baum v. Astazeneca LP*, 605 F. Supp. 2d 669 (W.D. Penn. 2009) (pharmaceutical sales representatives exempt); *Yacuobian v. Ortho-Mcneil Pharm. Inc.*, No. SACV-00127-CJC(MLGx), 2009 U.S. Dist. LEXIS 27937 (C.D. Cal. Feb. 6, 2009) (pharmaceutical sales representatives exempt outside salesmen). In fact, it was not until *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156 (2012), that the circuit split on whether pharmaceutical sales representatives were exempt was resolved. *Christopher* was decided on June 18, 2012 – well after Actionlink reclassified its brand advocates as non-exempt in response to the DOL's limited investigation. The trial testimony about Actionlink's roundtable meeting is not believable, and the Company has not met its burden to avoid mandatory liquidated damages.

    **B.    Even if the Roundtable Occurred, it Only Confirms that Actionlink Did Not Act in Good Faith and With Reasonable Grounds to Believe its Classification Decision Complied With the FLSA.**

Even if the roundtable meetings occurred (which is unlikely), the process outlined by Actionlink confirms that the Company did not act in good faith and did not have

reasonable grounds to believe it complied with the FLSA. The limited, preliminary investigation created more questions than answers about whether brand advocates are exempt outside salesmen. Rather than solicit professional advice to navigate the Act's exemption, Actionlink stuck its head in the sand and based its decision on pharmaceutical sales representatives – a hotly contested and dissimilar job position. Actionlink's conduct is not enough to overcome mandatory liquidated damages.

At trial, both Gries and Tanner testified that they had reviewed DOL Fact Sheet 17f, which discusses the outside sales exemption. (*Gries Test.* [Ex. A] at 26:8–21; *Tanner Test.* [Ex. A] at 73:1–20) (*see also Plaintiffs' Ex. 2*). The fact sheet states, in relevant part, that:

> Promotion work may or may not be exempt outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work. **However, promotion work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work**.

(*Plaintiffs' Ex. 2* at *2) (emphasis added). Gries testified that the roundtable members "were unclear on" the part of the regulation relating to promotional work. (*Gries Test.* [Ex. A] at 26:8–21). Tanner admitted that there was a "conflict in [his] mind" about whether brand advocates could be classified as exempt, and that there "seems to be a conflict in the advice there." (*Tanner Test.* [Ex. A] at 73:8–20). Both Gries and Tanner admit that, after they read the fact sheet explaining the specific exemption they were considering, they were unsure about whether brand advocates' promotional work was exempt or non-exempt work. They were aware, however, that promotion work, when

incidental to sales made by someone else, is not exempt work. Despite the disagreement among the individuals at the meeting, and realizing that there was a "conflict in the advice," the Company took no further steps to investigate and did not solicit any professional advice about the FLSA or whether brand advocates were exempt employees. (*Gries Test.* [Ex. A] at 25:8–20; *Tanner Test* [Ex. A] at 81:23–82:23). Actionlink's initial investigation revealed more questions than answers, and the Company did not take steps to discover whether the brand advocate position was exempt. Actionlink's head-in-the-sand strategy was not in good faith and was not objectively reasonable.

Actionlink was on notice that classifying brand advocates as exempt might violate the FLSA, and it did not act in good faith or with reasonable grounds when it did not take any additional steps to determine the legality of that decision. In *Johnson v. Big Lots Stores, Inc.*, 604 F. Supp. 2d 903, 925–26 (E.D. La. 2009), the court found that the employer did not show that it acted in good faith and with reasonable grounds when it classified certain employees as exempt. The court explained that, after a separate lawsuit was filed on the same issue, the employer was on notice that the employees might be improperly classified, and it did not act in good faith or with reasonable grounds when it did not inquire further into whether the classification decision was legal. *Id.* Because the employer did not take additional steps to determine if it was breaking the law, the court held that the employer had not shown that it should be exempted from the liquidated damages award. *Id.*

Likewise, the court in *Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2001), reversed a denial of liquidated damages because the employer did not satisfy

its burden of proving it acted in good faith when adopting the pay practice in question. The court noted that the employer did not rely "on the expertise or opinion of any other person or entity with knowledge of the FLSA regulations, including its attorney or the Department of Labor." *Id.* In fact, the employer never even requested an opinion from the DOL or any other expert about the pay scheme at issue. *Id.* As a result, the employer did not meet its burden of overcoming mandatory liquidated damages. *See also Krieg v. Pell's, Inc.* No. IP 00-1230-C-T/K, 2002 U.S. Dist. LEXIS 4861, at *13–14 (S.D. Ind. Jan. 28, 2002) (denying good faith defense and holding that, once employer was on notice that pay practices may violate the FLSA, "a prudent person with such notice would have sought professional advice. Pell offers no evidence that it did."); *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142–43 (2d Cir. 1999) (affirming award of liquidated damages when employer knew pay practices may violate the FLSA, but did not take any additional steps to ensure compliance); *Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1272–73 (11th Cir. 2008) (affirming award of liquidated damages when there was no evidence that the employer consulted the DOL or an FLSA expert before or during the period of the violation.).

Actionlink will likely argue that the Court should not award liquidated damages because it relied on Oasis's advice. In cases where Courts do not award liquidated damages, however, the employer seeks professional, competent advice. Actionlink's use of Oasis falls far short of what is required. For example, in *Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 917–18 (8th Cir. 1991), the court affirmed the denial of liquidated damages where the evidence established that the employer relied upon professional

guidance from the State's Office of Personnel Management, and OPM actually analyzed the specific positions at issue. Similarly, in *Hultgren v. County of Lancaster*, 913 F.2d 498, 508–10 (8th Cir. 1990), the court reversed an award of liquidated damages. There, the magistrate held that the employer had a good faith and reasonable belief that it did not have to pay for sleep time up until a DOL investigation because it consulted with counsel numerous times in attempting to comply with the FLSA. *Id.* at 509. The Eighth Circuit noted that ordinarily a letter from the DOL informing an employer of violations would "deprive the employer of a good faith defense." *Id.* In that case, however, the DOL suspended the investigation based of "inconsistent enforcement of Wage and Hour guidelines" with regard to the sleep-time issue. *Id.*

Like the employers in *Johnson* and *Elwell*, Actionlink has not met its burden of avoiding liquidated damages. Taking Actionlink's evidence as true, Actionlink's preliminary investigation revealed serious questions about whether brand advocates qualified for the outside-sales exemption. Despite the questions, Actionlink did not seek experienced guidance. The sum total of Oasis's advice to Actionlink on the exemption was providing a generic handout identifying the changes to the various FLSA exemptions made in 2004. (*Oasis Handout* [Ex. B]). No one from Oasis attended the roundtables or answered any questions. Oasis did not render any opinion.

Actionlink's failure to seek advice is especially appalling because it had access to competent professionals. Oasis, Actionlink's human resources company, had both inside and outside counsel that could be used to advise the Company. (*Tanner Test* [Ex. A] at 75:20-76:12). Actionlink also had access to other attorneys as well. (*Tanner Test* [Ex. A] at

75:20-76:6). Although Tanner testified that someone at the roundtable "was a law school graduate," Tanner did not testify about that individual's education or their experience with the FLSA. (*Tanner Test.* [Ex. A] at 56:16–58:1). Moreover, Tanner was silent on which member of the roundtable team did not agree that brand advocates were exempt, including the "law school graduate's" opinion on the exemption decision. (*Tanner Test.* [Ex. A] at 61:9–15). Despite having access to professionals and after realizing it might be violating the law, Actionlink did not consult an expert. The failure to consult with counsel under these circumstances might have been sufficient to show a willful violation, *Brown*, 2005 U.S. Dist. LEXIS at *29–30, and it certainly forecloses Actionlink's argument that it acted in good faith and had reasonable grounds to believe its actions did not violate the FLSA. Plaintiffs are entitled to liquidated damages.

Moreover, Actionlink's reliance on pharmaceutical sales representatives is ludicrous. Tanner testified that he relied on a single sentence of a handout listing pharmaceutical sales representatives as an example of exempt outside sales employees under the new (i.e., 2004) regulations. (*Tanner Test.* [Ex. A] at 71:11–72:4; *see also Oasis Handout* [Ex. B]). Based solely on this handout, Actionlink decided brand advocates were also exempt because they were just like pharmaceutical sales representatives. (*Gries Test.* [Ex. A] at 13:23–14:6; *Tanner Test.* [Ex. A] at 58:6–60:22). But Gries and Tanner both agreed that there are a myriad of significant differences between selling controlled substances and selling TVs and washing machines. (*Gries Test.* [Ex. A] at 25:24–226:7). Moreover, had Tanner done anything to investigate why (or whether) pharmaceutical sales representatives qualified for the outside sales exemption, he would have learned that

there were a number of lawsuits alleging that pharmaceutical sales representatives were not exempt outside sales employees.

Actionlink cannot meet its heavy burden of proving the good faith defense to liquidated damages. Actionlink knew that brand advocates might not be exempt, but it did not seek any expert advice to guide its decision. Instead, Actionlink simply decided that its brand advocates were exempt outside sales employees because a handout summarizing the 2004 changes to the FLSA regulations listed pharmaceutical sales representatives as an example of exempt outside sales employees, apparently unaware of the unique regulatory environment of selling prescription drugs and the other obvious difference with the brand advocate position. Actionlink also did not even investigate why (or whether) pharmaceutical sales representatives qualified for an FLSA exemption. The Court should award liquidated damages in an equal amount to the backpay checks.

C. **Actionlink's Cooperation with the DOL is Irrelevant.**

Actionlink will likely argue that once the DOL began its investigation, the Company complied with the DOL's requests. In order to avoid liquidated damages, the employer must prove that their erroneous classification decision was objectively reasonable and that they acted in good faith when they made that decision. *Brown*, 2005 U.S. Dist. LEXIS 39920, at *36–37. The DOL investigation, however, occurred well after Actionlink misclassified the brand advocates. As a result, that evidence has no bearing on whether Actionlink acted in good faith and with reasonable grounds at the time it implemented the pay practice at issue here. If Actionlink's arguments were acceptable, an employer could always avoid liquidated damages so long as it complied with the

DOL's requests (which employers are already required to do). The Court should disregard the testimony and argument related to Actionlink's conduct after it was caught violating the law.

## V. Conclusion

This is not a case where an employer investigated the requirements of the FLSA, tried its best to comply, and got it wrong. Instead, Actionlink made a preliminary investigation into the Act's requirements and realized that there were a number of problems with classifying brand advocates as exempt. Despite knowing the classification decision may be illegal, Actionlink never consulted an attorney, the DOL, or even its own human resources management company for professional advice on how to comply with the FLSA. The Company has not met its burden of proving that it acted in good faith and with reasonable grounds to believe its decision to classify brand advocate as exempt complied with the FLSA. As a result, liquidated damages are mandatory, and the Court should determine as a matter of law that Plaintiffs' are entitled to liquidated damages in an amount equal to the backpay checks already issued.

Respectfully submitted,


HOLLEMAN & ASSOCIATES, P.A.
1008 West Second Street
Little Rock, AR 72201
Telephone: (501) 975-5040
Facsimile:  (501) 975-5043

By:    /s/ Timothy A. Steadman
       John Holleman, ABN 91056
       jholleman@johnholleman.net
       Timothy A. Steadman, ABN 2009113
       tim@johnholleman.net

**CERTIFICATE OF SERVICE**

    I, Timothy A. Steadman, certify that a true and accurate copy of the foregoing document was sent via CM/ECF on this 8th day of June, 2016, which will send notification to all counsel of record.

                                                    /s/ Timothy A. Steadman
                                                  Timothy A. Steadman