**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

JENNIFER BEAUFORD, et al.,                                                                    PLAINTIFFS
individually and on behalf of
others similarly situated

v.                                              NO. 4:12CV00139 JLH

ACTIONLINK, LLC                                                                                DEFENDANT

## OPINION AND ORDER

The plaintiffs in this case were employed by ActionLink, LLC, as brand advocates in the LG Slingshot program, which was a program in which ActionLink provided marketing services for LG Electronics, LLC. The plaintiffs brought this action alleging that ActionLink failed to pay them overtime as required by the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ActionLink contended that the brand advocates were exempt from the overtime requirements of the Fair Labor Standards Act pursuant to the outside sales exemption and the administrative exemption. This Court granted the plaintiffs' motion for partial summary judgment, holding as a matter of law that the brand advocates were not exempt.

ActionLink subsequently moved for partial summary judgment contending that the claims of more than twenty plaintiffs should be dismissed pursuant to 29 U.S.C. § 216(c). Those plaintiffs signed and cashed checks the stubs of which stated that the checks represented full payment of all wages earned. This Court granted ActionLink's motion and dismissed the claims of those plaintiffs.[1]

On appeal, the United States Court of Appeals for the Eighth Circuit affirmed this Court's holding that, as a matter of law, the brand advocates were not exempt from the overtime requirements of the Fair Labor Standards Act, but reversed with respect to the plaintiffs whose

---

[1] ActionLink then made an offer of judgment to all of the plaintiffs whose claims had not been dismissed. Those plaintiffs accepted the offer, and judgment was entered accordingly.

claims were dismissed pursuant to 29 U.S.C. § 216(c). *Beauford v. ActionLink, LLC*, 781 F.3d 396, 399 (8th Cir. 2015). As to those plaintiffs, the Eighth Circuit held that the language on the check stubs was insufficient to notify employees of the consequences of cashing the checks. *Id*.

On remand, ActionLink moved for partial summary judgment contending that the remaining plaintiffs do not have sufficient evidence to show that the amount and extent of overtime work should be different from that recorded on the Department of Labor's Form WH-56. The Department of Labor conducted an investigation into ActionLink's overtime pay practices in the fall of 2011. By December of 2011, the Department of Labor had determined that brand advocates were not exempt. ActionLink then reclassified brand advocates from exempt to nonexempt. In January of 2012, the Department of Labor investigator provided ActionLink with a Form WH-56 reflecting the amounts that should have been paid. *Id*. at 400. Although the plaintiffs initially opposed ActionLink's motion for partial summary judgment, they subsequently withdrew their opposition, so the Court entered an order granting the motion for partial summary judgment on the issue of whether the amount and extent of overtime work should be different from that recorded on the Department of Labor's Form WH-56.

The Court then conducted a bench trial on the issue of whether the remaining plaintiffs are entitled to liquidated damages pursuant to 29 U.S.C. § 216(b), which provides that any employer who fails to pay the required minimum wage or overtime must pay that amount plus an additional equal amount as liquidated damages. An employer may avoid the additional damages by showing that the failure to pay the required overtime was in good faith and that the employer had reasonable grounds for believing that the decision was not a violation of the Fair Labor Standards Act. 29 U.S.C. § 260.

Liquidated damages under the Fair Labor Standards Act are not punitive; rather, they are designed to compensate employees for the delay in the payment of the wages due under the Fair Labor Standards Act. *Chao v. Barbeque Ventures, LLC*, 547 F.3d 938, 941 (8th Cir. 2008). The employer bears the burden of proving both good faith and reasonableness. *Id*. "'This burden is a difficult one, with double damages being the norm and single damages being the exception.'" *Id*. at 941-42 (quoting *Herman v. RSR Sec. Servs., Ltd.*, 172 F.3d 132, 142 (2nd Cir. 1999)).

The good faith requirement is a subjective standard that requires the employer to establish an honest intention to ascertain and follow the requirements of the Fair Labor Standards Act. *Id*. at 942. To carry the burden of showing good faith, the employer must show that it took affirmative steps to determine the requirements of the Fair Labor Standards Act but nevertheless violated those requirements. *Id*. In addition, as mentioned, the employer must prove that its position was objectively reasonable. *Id*. Ignorance is no excuse. *Id*.

On appeal, the Eighth Circuit described the job duties of brand advocates as follows:

ActionLink hired "brand advocates" to visit retail stores, to train the retail stores' employees on how LG electronics worked, and to convince those employees to recommend LG products to customers. ActionLink preferred to hire brand advocates with prior sales and marketing experience, but it did not require this prior experience. Brand advocates occupied the bottom of ActionLink's organizational chart.

ActionLink typically trained brand advocates for five days. It assigned every brand advocate approximately twenty stores to cover each week. ActionLink provided brand advocates with scripts, PowerPoint presentations, and other promotional materials to use when they visited stores. In addition to teaching store employees about LG products, the brand advocates maintained in-store LG displays, cleaned and repaired LG products, and spoke with customers who had questions about the products. The brand advocates' goal was to boost sales of LG products. ActionLink provided each brand advocate a small monthly budget to use for promotional activities. Despite their other tasks, brand advocates did not sell directly to customers or to retail stores. ActionLink prohibited brand advocates from negotiating prices, making marketing decisions, and deciding what inventory should be ordered. Brand advocates maintained a close relationship with their supervisors.

> They frequently spoke with supervisors during conference calls and through emails. And at the end of each store visit, ActionLink required brand advocates to complete a six-page call report informing ActionLink exactly what the brand advocates did during their visits.

*Beauford*, 781 F.3d at 399-400.

At the evidentiary hearing, ActionLink presented the testimony of David Gries, who was the payroll manager for ActionLink at the time the decision in question was made, and Delbert Tanner, who was and is the Chief Operating Officer of ActionLink. The testimony of Gries and Tanner established that ActionLink had several persons involved in discussing whether brand advocates in the LG Slingshot program were exempt from the overtime requirements of the Fair Labor Standards Act. Document #191 at 13, 56-63. After some period of investigation, a roundtable meeting was conducted among these various individuals, with Tanner present, after which Tanner made the decision that brand advocates were exempt and would not be paid overtime. *Id*. at 61. Persons who participated in this discussion included some employees from ActionLink's human resources department and some from its executive team. *Id*. at 13. Before the roundtable meeting, Gries printed documents from the Department of Labor website and circulated them. *Id*. He also obtained a document from Oasis Outsourcing, a human resources management company engaged by ActionLink to assist it in managing human resources issues. *Id*. at 12, 69, 71.

The document provided by Oasis Outsourcing is an undated description of revisions by the Department of Labor to regulations defining the executive, administrative, professional, outside sales, and computer professional exemptions under the Fair Labor Standards Act. Plaintiffs' Exhibit 6. Although ActionLink argued here and in the Eighth Circuit that brand advocates fell within the administrative exemption, at the time the decision was made to classify brand advocates as exempt, the only exemption that ActionLink considered was the outside sales exemption.

According to the document provided to ActionLink by Oasis Outsourcing, to meet the outside sales exemption an employee must make sales or obtain orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer and must customarily and regularly be engaged away from the employer's place or places of business. *Id*. That document says that pharmaceutical sales representatives who spend the majority of their time soliciting doctors' offices away from the employer's place of business are an example of personnel who are exempt under the outside sales exemption. *Id*.

The participants in the roundtable discussion also reviewed a factsheet from the Department of Labor that explained requirements of the outside sales exemption. Document #191 at 69; Plaintiffs' Exhibit 2. That factsheet explains that to qualify for the outside sales exemption, an employee's "primary duty must be making sales (as defined in the FLSA), or obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer . . . ." *Id*. That factsheet also says:

> Promotion work may or may not be exempt from outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work. However, promotion work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work.

*Id*. The factsheet includes a toll-free telephone number for persons to call for additional information. *Id*.

Gries testified that he went into the roundtable discussion conflicted on the issue of whether brand advocates were exempt under the outside sales exemption, but he was persuaded during the course of the discussion that they were. Document #191 at 14. The similarity between the work of

brand advocates and the work of pharmaceutical sales representatives was the key factor in his conversion to the nonexempt position. *Id*.

Tanner testified that he was surprised that there was an issue to be discussed because in the small industry in which ActionLink competes brand advocates are always treated as exempt. *Id*. at 78. In the end, he was persuaded by the fact that pharmaceutical sales representatives are exempt under the outside sales exemption because he believes that their duties are similar to those of a brand advocate. *Id*. at 59. Tanner testified that he called several pharmaceutical sales representatives to ascertain the nature of their duties and the manner in which they conduct their work, and he concluded that ActionLink's brand advoactes were, indeed, very similar to pharmaceutical sales representatives. *Id*. at 59-60. Tanner also testified that there was some division of opinion among the group at the roundtable discussion and that, in his recollection, at least one member of the group continued to maintain that brand advoacates were not exempt from the overtime requirements of the Fair Labor Standards Act even after all of the information had been obtained and the various points discussed. *Id*. at 61.

ActionLink did not obtain a professional opinion as to whether brand advocates were exempt. No opinion was obtained from the Department of Labor, ActionLink's attorneys, Oasis Outsourcing, or Oasis Outsourcing's attorneys, although these persons were available to ActionLink. *Id*. at 75-76, 82.

ActionLink has not met its burden under 29 U.S.C. § 260. In ruling that, as a matter of law, brand advocates were not exempt under the outside sales exemption, the Eighth Circuit explained:

> Brand advocates' activities are better understood as non-exempt promotional work. Brand advocates engaged in "[p]romotional activities designed to stimulate sales that will be made by someone [other than the brand advocate]." *See* 29 C.F.R. § 541.503(b). And the DOL's example of non-exempt promotional work accurately

6

> sums up the brand advocates' job duties: "a company representative who visits chain stores, arranges the merchandise on shelves, ... [and] sets up displays ... but does not obtain a commitment for additional purchases" is performing non-exempt work "unless it is incidental to and in conjunction with the employee's *own* outside sales." *Id*. § 541.503(c) (emphasis added). Brand advocates simply promoted products so employees of retail stores could make sales. Those retail-store employees engaged in the paradigmatic sale of electronics—they convinced customers to choose a product and helped that customer pay for it at a cash register. Brand advocates were not outside salesmen under the FLSA.

*Beauford*, 781 F.3d at 403. This explanation is substantially similar to the explanation of nonexempt promotion work in the Fair Labor Standards Act factsheet that ActionLink's personnel reviewed at the roundtable discussion. Plaintiffs' Exhibit 2. Although Tanner testified that his industry does not consider the work of brand advocates as promotional work, Document #191 at 68, regardless of the terminology used by competitors in that industry, the work of brand advocates clearly is nonexempt promotional activity as defined in the outside sales exemption regulations. Brand advocates do not make sales; rather, they promote products so that employees of retail stores can make sales.

As noted, both Gries and Tanner based their conclusion that brand advocates were exempt largely on their belief that pharmaceutical sales representatives were exempt. The Supreme Court held that pharmaceutical sales representatives fall within the outside sales exemption on June 18, 2012, some eighteen months after ActionLink's decision to classify brand advocates as exempt. *Christopher v. SmithKline Beecham Corp.*, __ U.S. __, 132 S. Ct. 2156, 2174, 183 L. Ed. 2d 153 (2012). When ActionLink made its decision to classify brand advocates as exempt, the issue was unsettled. *Compare In re Novartis Wage & Hour Litig.*, 611 F.3d 141 (2nd Cir. 2010) (pharmaceutical sales representatives are not exempt outside salesmen) *with Christopher v. SmithKline Beecham Corp.*, 635 F.3d 383 (9th Cir. 2011) (pharmaceutical sales representatives are

exempt outside salesmen).[2] The rationale for the holding that pharmaceutical sales representatives are exempt outside salesmen rests on unique features of the pharmaceutical industry that are not present in the electronics industry. *See Christopher*, 132 S. Ct. at 2172-73 (explaining "the unique regulatory environment in which pharmaceutical companies must operate"), *Christopher*, 635 F.3d at 396 (explaining "the structure and realities of the heavily regulated industry"). Furthermore, brand advocates "generally made far less than pharmaceutical representatives, and they receive no incentive-based pay." *Beauford*, 781 F.3 at 403. Tanner testified that the program was originally designed to receive a commission, but LG scrapped that element of the program at its inception. Document #191 at 74.

Gries and Tanner recognized that there was an apparent conflict between their conclusion that if pharmaceutical sales representatives are exempt then brand advocates must be, and the description of nonexempt promotional work in the Department of Labor factsheet that they reviewed. Document #191 at 14, 26, 73. Yet they did not seek assistance from the Department of Labor, nor advice from Oasis Outsourcing or an attorney, in an effort to resolve this apparent conflict. Rather, they relied on information that seemed favorable to the position that was in ActionLink's financial interest, while disregarding information presented to them that appeared to dictate a different result. While an employer who has misclassified employees need not in every instance seek professional advice in order to show that its decision was in good faith and objectively

---

[2] The LG Slingshot program began in February of 2011. Document #191 at 27. The Ninth Circuit issued its opinion in *Christopher* on February 14, 2011. The record does not reveal the date of ActionLink's roundtable discussion, but in all likelihood it predated the Ninth Circuit's decision in *Christopher*. ActionLink prepared a position description dated November 2010 in which it said that brand advocates in the LG Slingshot program would be exempt under the FLSA. Plaintiffs' Exhibit 5; Defendant's Exhibit 4. If the roundtable discussion preceded the preparation of that position description, the only circuit court decision on point at the time was *Novartis*, which held that pharmaceutical sales representatives were not exempt.

reasonable, here ActionLink knew of information that seemed to conflict with the decision that it was reaching but sought no professional assistance in resolving that conflict. *Cf. Rodriguez v. Farm Stores Grocery, Inc.*, 518 F.3d 1259, 1273 (11th Cir. 2008); *Elwell v. Univ. Hospitals Home Care Servs.*, 276 F.3d 832, 841 (6th Cir. 2002).

Nor does ActionLink's explanation that everyone in the industry treated brand advocates as outside salesmen suffice to make its conduct objectively reasonable. ActionLink does not participate in a large, widespread industry with numerous competitors who have independently come to the same conclusion regarding the exempt status of a category of employees, nor does it participate in an industry with a lengthy history such that silence by the Department of Labor might be considered acquiescence in the proposition that brand advocates were exempt outside salesmen. Rather, the industry in which ActionLink competes is a small one, with few competitors, all of whom know one another, and all of whom know what the others are doing. Document #191 at 37-38. In the context of an industry such as this, the fact that "everyone is doing it" carries little weight with respect to whether the decision to do what everyone else was doing was objectively reasonable.

As mentioned above, the burden on an employer to prove both good faith and objective reasonableness is a difficult one, with liquidated damages being the norm and single damages being the exception. *Chao*, 547 F.3d at 941-42. ActionLink has not met that high burden.

Therefore, pursuant to 29 U.S.C. § 216(b), ActionLink must pay, in addition to the unpaid overtime compensation, an additional equal amount as liquidated damages.

As noted, the plaintiffs withdrew their opposition to ActionLink's motion for partial summary judgment on the issue of whether the amount and extent of overtime work should be different from that recorded on the Department of Labor's Form WH-56. It is undisputed that

ActionLink paid to each employee the amount shown on the Department of Labor's Form WH-56 and, in some instances, an additional amount.

The Court orders plaintiffs' counsel to prepare a table showing the name of each plaintiff remaining in the action, the amount of overtime compensation owed to each plaintiff according to the Department of Labor's Form WH-56, and the amount paid to each remaining plaintiff as shown on the checks issued by ActionLink. Plaintiffs' counsel will then present that table to defense counsel. The Court expects that the parties will stipulate to the accuracy of the table based upon the Department of Labor's Form WH-56 and the checks issued by ActionLink to the employees. If the parties stipulate to the accuracy of the table, it should be presented to the Court and a judgment will be entered based upon it. If the parties are unable to reach a stipulation, they should present their disagreement to the Court for resolution.

For each remaining plaintiff to whom ActionLink has paid less than double the amount shown on the Form WH-56, judgment will be entered in the amount of the difference between what ActionLink has paid and the amount shown on the Form WH-56 multiplied by two. If ActionLink has already paid to any plaintiff double the amount shown on the Form WH-56, no further damages will be owed to that plaintiff.

IT IS SO ORDERED this 14th day of June, 2016.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE